NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DAMON TAYLOR, | : | |
| Plaintiff, | : | Civil Action No. 10-6172 (DMC) |
| | : | |
| v. | : | |
| | : | |
| ESSEX COUNTY CORRECTIONAL FACILITY, | : | |
| | : | |
| Defendant. | : | |

---

|  |  |  |
|---|---|---|
| DAMON TAYLOR, | : | |
| Plaintiff, | : | Civil Action No. 11-2615 (DMC) |
| | : | |
| v. | : | |
| | : | |
| ESSEX COUNTY CORRECTIONAL FACILITY, et al., | : | |
| | : | |
| Defendants. | : | |

---

APPEARANCES:

Plaintiff pro se
Damon Taylor
S.S.C.F., Unit - 5
4295 Route 47
Delmonte, NJ 08314

O P I N I O N

CAVANAUGH, District Judge

Plaintiff Damon Taylor, a prisoner confined at Southern

State Correctional Facility in Delmonte, New Jersey, seeks to

bring these actions in forma pauperis pursuant to 42 U.S.C.

§ 1983, alleging violations of his constitutional rights.[1]

The issue having been raised by the Court sua sponte, and it appearing that Civil Actions Nos. 10-6172 and 11-2615 involve common questions of law and fact, this Court shall, pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, order such actions consolidated, shall designate Civil Action No. 10-6172 as the "Lead Case," shall order the Complaint submitted in Civil Action No. 11-2615 docketed as an Amended Complaint in the Lead Case, and shall order the Clerk to administratively terminate Civil Action No. 11-2615.

At this time, the Court must review the Complaint and Amended Complaint to determine whether the Lead Case should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and Amended Complaint and are accepted as true for purposes of this review.

---

[1] Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaints and consolidate these actions.

Plaintiff alleges that while he was confined as a pre-trial detainee at Essex County Correctional Facility, he was placed in protective custody.  He alleges that he was assigned to a two-man cell with well-known gang members.  He also alleges that State Correctional Officer Ruiz told other gang members in the unit that Plaintiff was charged with rape of a 15-year-old, a 14-year-old, and a 4-year-old.  He alleges that State Correctional Officer Irene told two known gang members that he would open their cell doors so that they could "jump" Plaintiff when he was let out of his cell for showers and recreation.  Plaintiff alleges that the statements of the correctional officers, about the charges against him, were lies and that the actions of the correctional officers put him in fear and placed his life in danger.

Plaintiff alleges that these events took place beginning in November 11, 2009, through April, 2010, while he was a pre-trial detainee.[2]

---

[2] The Amended Complaint was submitted after Plaintiff had been convicted and sentenced and transferred to Southern State Correctional Facility.  According to the New Jersey Department of Corrections Inmate Locator, Plaintiff was sentenced on December 15, 2010, on one count of possession of a controlled dangerous substance, in violation of N.J.S.A. 2C:35-10(a)(3), and one count of endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(a).  Plaintiff's current projected maximum release date is May 23, 2012.  See https://www6.state.nj.us/DOC_Inmate/details?x=1032695&n=3.

Plaintiff names as defendants Essex County Correctional

Facility,[3] State Correctional Officer Ruiz, and State

Correctional Officer Irene.  He seeks "compensation" for the

officers' alleged wrongdoing, which this Court construes as a

claim for compensatory damages for putting Plaintiff in fear, and

injunctive relief in the form of termination of the correctional

officers' employment.[4]

---

[3] All claims against Essex County Correctional Facility will
be dismissed, as a jail is not a "person" amenable to suit under
42 U.S.C. § 1983.  See Marsden v. Federal BOP, 856 F. Supp. 832,
836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit
under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp.
757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under
§ 1983); McCoy v. Chesapeake Correctional Center, 788 F. Supp.
890, 893-94 (E. D. Va. 1992) (local jail not a "person" under §
1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995
(N.D. Cal. 1996) (county department of corrections is an agency
of the county and cannot be sued separately from the county under
§ 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)
(county department of corrections not a suable entity separate
from the county).

[4] Title 42 U.S.C. § 1997e(a) provides that no action shall
be brought with respect to prison conditions, by a confined
prisoner, "until such administrative remedies as are available
are exhausted."  Here, Plaintiff states that he did not seek
informal or formal relief from administrative officials because
he was in fear for his life.  The Court of Appeals for the Third
Circuit has not addressed, in a precedential opinion, whether
threats of retaliation excuse the exhaustion requirement.  See
Barger v. Walton, 317 Fed.Appx. 188, 190 (3d Cir. 2009).  In any
event, Plaintiff has failed to allege facts demonstrating
intimidation.  However, because there is no evidence before the
Court at this time as to what administrative remedies, if any,
were available to Plaintiff at Essex County Correctional
Facility, this Court will not, at this time, dismiss the action
for failure to exhaust administrative remedies.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;

the statement need only 'give the defendant fair notice of what

the ... claim is and the grounds upon which it rests.'" Erickson

v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made. Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement. And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ... It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice. Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality. Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not

> merely parallel conduct that could just as well be
> independent action.
>
> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a

claimant cannot satisfy the requirement that he or she
provide not only "fair notice," but also the "grounds"
on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  Id. at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,

8

the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an

10

adjudication of guilt in accordance with due process of
law. ...

     Not every disability imposed during pretrial
detention amounts to "punishment" in the constitutional
sense, however.  Once the government has exercised its
conceded authority to detain a person pending trial, it
obviously is entitled to employ devices that are
calculated to effectuate this detention. ...

     A court must decide whether the disability is
imposed for the purpose of punishment or whether it is
but an incident of some other legitimate governmental
purpose.  Absent a showing of an expressed intent to
punish on the part of detention facility officials,
that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees qua
detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.   441 U.S.
at 539 n.20.   Nor are grossly exaggerated responses to genuine
security considerations.   Id. at 539 n.20, 561-62.

Here, Plaintiff has alleged that State Correctional Officers
Ruiz and Irene sought to punish him and place him in danger, in
advance of his conviction, by falsely telling violent prisoners
that Plaintiff was confined for raping three children.   Were
Plaintiff still confined under these conditions, they might be
sufficient to state a claim.   Cf. Brown v. Narvais, 265 Fed.Appx.
734, 735-36 (10th Cir. 2008) (allegation that defendant disclosed
prisoner's status as a child molester, knowing that such label
would likely subject prisoner to serious bodily injury from other
prisoners, states an Eighth Amendment (cruel and unusual
punishment) violation, even though prisoner was not attacked,
where prisoner alleges that such information has been
disseminated to other prisons where he will likely serve).   The
allegations here, however, are not enough to permit this claim to
proceed.   Plaintiff is no longer in danger as a result of the
alleged actions of Officers Ruiz and Irene, and he has not
alleged any injury from the defendants' alleged actions, other
than that he became fearful.   Indeed, while he alleges that
Officer Irene told other prisoners that he would leave their
cells unlocked so that they could "jump" Plaintiff, he does not
allege that Officer Irene actually left the other prisoners'

12

cells unlocked or otherwise actually put Plaintiff in any danger.
Nor does Plaintiff allege that the false statements about the
basis for his confinement have placed him in any danger in
subsequent prison placements.  Thus, the only harm alleged is
emotional harm.

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be
brought by a prisoner confined in a jail, prison, or other
correctional facility, for mental or emotional injury suffered
while in custody without a prior showing of physical injury."
Thus, Plaintiff's claims for compensatory damages solely for
mental anguish may not proceed.  See Michtavi v. United States,
345 Fed.Appx. 727 (3d Cir. 2009); Toussaint v. Good, 276
Fed.Appx. 122, 124 (3d Cir. 2008).  "[T]he prevailing view is
that 'physical injury is an observable or diagnosable medical
condition requiring treatment by a medical care professional."
In re Bayside Prison Litigation, 2010 WL 4916761, *3 (D.N.J. Nov.
23, 2010) (citations omitted).  Plaintiff has alleged no such
physical injury,[5] thus his claims cannot proceed.  Cf. Brown v.

---

[5] The bar of § 1997e(e) does not apply to requests for
nominal or punitive damages, which typically are not "for" mental
or emotional injury but rather to vindicate constitutional rights
or to deter or punish egregious violations of constitutional
rights; similarly, the bar of § 1997e(e) does not apply to
requests for prospective declaratory or injunctive relief, which
typically are to provide relief from ongoing or future
constitutional violations.  See Mitchell v. Horn, 318 F.3d 523,
533-34 (3d Cir. 2003).  Here, however, Plaintiff has not asked
for nominal or punitive damages, either expressly or via a claim
for other appropriate relief.  As noted above, Plaintiff no

County of Atlantic, 2010 WL 2518540, *3 (D.N.J. June 11, 2010)

(no cause of action for having been put in fear of exposure to

tuberculosis, where there is no physical injury).

Moreover, as Plaintiff is no longer confined at Essex County

Correctional Facility, he no longer has standing to request

prospective declaratory or injunctive relief, in the form of the

termination of the defendants' employment.  See, e.g., Mitchell

v. Horn, 318 F.3d 523, 533-34 (3d Cir. 2003) (citing Los Angeles

v. Lyons, 461 U.S. 95, 105 (1983)).

V.   CONCLUSION

For the reasons set forth above, all claims will be

dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1) and 42 U.S.C. § 1997e(e).  However, because it is

conceivable that Plaintiff may be able to supplement his pleading

with facts sufficient to overcome the deficiencies noted herein,

the Court will grant Plaintiff leave to file a motion to re-open

and a proposed amended complaint.[6]

---

longer has standing to obtain declaratory or injunctive relief.

    [6] Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.

14

An appropriate order follows.

_____
Dennis M. Cavanaugh
United States District Judge

Dated: 7/25/11